**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————————

**THOMAS R., ET AL.,**

                    **Plaintiffs,**              **21-cv-1388 (JGK)**

          **- against -**                        **MEMORANDUM OPINION**
                                                 **AND ORDER**
**HARTFORD LIFE AND ACCIDENT INSURANCE**
**COMPANY,**

                    **Defendant.**
——————————————————————————

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Thomas R. and his guardian, Gino F.,
brought this action against Hartford Life and Accident Insurance
Company ("Hartford"), seeking to recover benefits that the
plaintiffs alleged are due under Tara R.'s life insurance plans.
The plans in this case are employee welfare benefit plans
governed by the Employee Retirement Income Security Act
("ERISA"), 29 U.S.C. §§ 1001 et seq. Tara R. is Thomas R.'s
mother, and Thomas R. is the beneficiary of the plans. On
November 6, 2024, the parties reported that they had settled the
case. See ECF No. 83. However, the plaintiffs' claim for
attorney's fees remains unresolved. See id.

    Pursuant to 29 U.S.C. § 1132(g)(1), the plaintiffs have
moved for $245,134.12 in attorney's fees, and $518.44 in costs.
The defendant opposes the motion.

**I.**

The Court assumes familiarity with the history of the case, which has been described in the Court's previous opinion on the parties' cross-motions for summary judgment. See July 19, 2022 Hearing Tr., ECF No. 55-1 ("SJ Bench Op."). The following summary sets forth only those facts necessary to contextualize the ruling on the plaintiff's motion for attorney's fees.

The plaintiffs are represented by the law firm Riemer Hess LLC (the "Firm"); the defendant is represented by the law firm Robinson & Cole LLP.

By letter dated August 16, 2019, the Superintendent of Schools for the Brentwood Union Free School District (the "District") offered Tara R. a position as a full-time art teacher "[f]or the period 9/3/2019 to 6/30/2020" (the "Offer Letter"). Riemer Aff. Ex. 1 at 101, ECF No. 26. Another letter dated the same day informed Tara R. that the District had scheduled her to attend a "New Teacher Orientation" program on August 21, 2019, and August 22, 2019, from 8:30 a.m. to 3:00 p.m. Id. at 102. Tara R. signed the Offer Letter a few days later, thereby accepting the job offer. See id. at 101.

On August 21, 2019, the first day of orientation, Tara R. signed a benefits enrollment form for the Group Basic Term Life Insurance Plan (the "Basic Plan"). Id. at 274-75. The Basic Plan

2

was issued pursuant to a group life insurance policy issued by Hartford to the District (the "Policy"). Id. at 14, 25. The Basic Plan provided a $25,000 life insurance benefit to covered employees. Id. at 16. The enrollment form included blanks for "Date of Hire" and "Effective Date." Id. at 274. The Date of Hire listed on the form appears to have originally read "9/1/19," but was written over to read "10/2/19." Id. The Effective Date also appears to have been written over to read "11/1/19," although it is not clear what date was originally marked. Id.

On August 21, 2019, Tara R. also signed a benefits enrollment form for the Group Supplemental Dependent Life Insurance Plan (the "Supplemental Plan"; together with the Basic Plan, the "Plans"), which was also issued pursuant to the Policy. Id. at 278-80. Tara R. indicated on the enrollment form that she was enrolling for $100,000 of coverage. Id. at 278. The Date of Hire listed on the form is 10/2/19, and the Effective Date is 11/1/19. Id. at 278.

Thomas R., Tara R.'s son, is the sole primary beneficiary listed on both enrollment forms. Id. at 274, 279.

Until October 2019, Tara R. was receiving treatment for lung cancer, and was not able to attend work. See id. at 231, 255. On October 2, 2019, Tara R. attended work as an art teacher

for the full day. Id. at 121. She did not attend work again due to her symptoms and treatment. Id. On March 24, 2020, Tara R. passed away. Id. at 281.

On April 10, 2020, the plaintiffs filed a claim with Hartford. Id. at 259-60. On April 24, 2020, Hartford denied the claim. Id. at 207-11. On June 23, 2020, the plaintiffs filed an appeal with Hartford. Id. at 261-66. On September 3, 2020, the appeal was denied. Id. at 76-79. This suit ensued.

The core dispute in this case was whether Tara R.'s coverage under the Plans had begun before she passed away. See generally SJ Bench Op. The parties disagreed on the interpretation of certain terms in the Plans and the application of those terms to Tara R.'s unique circumstances, including, for example: whether Tara R. was a "Full-time Active Employee" within the meaning of the Plans; and the date on which Tara R. was "hired." See id. at 13-17.

On July 19, 2022, the Court denied the parties' cross-motions for summary judgment. See id. at 17; see also ECF No. 41. The Court concluded that the contractual terms at issue were ambiguous, that both parties' constructions of the terms were reasonable, and that issues of fact therefore precluded summary judgment. See SJ Bench Op. at 14, 17.

The parties then requested that the Court decide the case based on the written record and oral argument on the parties' submissions. See ECF No. 69. The Court heard oral argument on October 16, 2024.

On November 6, 2024, the parties advised the Court that the parties had settled the case. See ECF No. 83. However, the plaintiffs' claim for attorney's fees remained unresolved. See id.

This motion for attorney's fees followed. See ECF No. 89.

## II.

In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs . . . to either party." 29 U.S.C. § 1132(g)(1). "It is well-established that Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights." Donachie v. Liberty Life Assurance Co. of Boston, 745 F.3d 41, 45–46 (2d Cir. 2014).[1] ERISA's fee provisions "must be liberally construed to protect [this] statutory purpose." Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 47 (2d Cir. 2009). The Second Circuit Court of Appeals has instructed that "granting a prevailing [ERISA] plaintiff's request for fees is appropriate absent some

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

particular justification for not doing so." Donachie, 745 F.3d
at 47. A successful plaintiff may also "recover reasonable out-
of-pocket expenses incurred during litigation as part of an
attorneys' fee award." Cohen v. Life Ins. Co. of N. Am., No. 17-
cv-9270, 2019 WL 1785095, at *2 (S.D.N.Y. Apr. 24, 2019).

### III.

In exercising the discretion that § 1132(g)(1) grants, a
district court "may only award attorney's fees to a beneficiary
who has obtained 'some degree of success on the merits.'"
Donachie, 745 F.3d at 46 (quoting Hardt v. Reliance Standard
Life Ins. Co., 560 U.S. 242, 254-55 (2010)). "[W]hether a
plaintiff has obtained some degree of success on the merits is
the sole factor that a court must consider in exercising its
discretion." Id. Although a court may consider five additional
factors, known as the "Chambless factors," in deciding whether
to award attorney's fees, it is not required to do so. Id.[2]

At the outset, the parties dispute whether the Court should
award the plaintiffs attorney's fees and costs at all. The
plaintiffs argue that they achieved some degree of success on

---

[2] The Chambless factors are: (1) the degree of the opposing party's
culpability or bad faith; (2) the opposing parties' ability to satisfy an
award of attorney's fees; (3) an award of attorney's fees' deterrent effect
on other persons acting under similar circumstances; (4) whether the party
requesting fees sought to benefit all participants and beneficiaries of an
ERISA plan or to resolve a significant legal question regarding ERISA itself;
and (5) the relative merits of the parties' positions. Donachie, 745 F.3d at
46.

the merits of their group life insurance claim, and that the inquiry should end there. The defendant contends that the Court should consider the Chambless factors. In the defendant's view, the Chambless factors support the denial of the plaintiffs' request for attorney's fees.

At oral argument, the defendant conceded that it did not—and indeed could not—dispute that the plaintiffs in this case obtained some degree of success on the merits. That alone is sufficient to support an award of attorney's fees under ERISA. See Donachie, 745 F.3d at 46 (holding that a court "may, without further inquiry, award attorney's fees to a plaintiff who has had some degree of success on the merits" (emphasis omitted)). It is unnecessary to evaluate the Chambless factors. See, e.g., Graziano v. First Unum Life Ins. Co., No. 21-cv-2708, 2024 WL 1175143, at *1 n.2 (S.D.N.Y. Mar. 19, 2024) (awarding fees to the ERISA plaintiff without applying the Chambless factors); Cohen, 2019 WL 1785095, at *2 (same); Dimopoulou v. First Unum Life Ins. Co., No. 13-cv-7159, 2017 WL 464430, at *2 (S.D.N.Y. Feb. 3, 2017) (same). Furthermore, the defendant has identified no "particular justification" for denying the plaintiffs such an award. Donachie, 745 F.3d at 47.

Accordingly, the plaintiffs are entitled to reasonable attorney's fees.

**IV.**

**A.**

Attorney's fees "are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." Bergerson v. New York State Off. of Mental Health, 652 F.3d 277, 289 (2d Cir. 2011).

"The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). To arrive at a reasonable fee, courts consider, among other factors, the factors set forth in Johnson v. Ga. Highway Express Inc., 488 F.2d 714, 717–19 (5th Cir. 1974). Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections, 522 F.3d 182, 186 n.3, 190 (2d Cir. 2008).[3] Courts also "consider the rates charged by attorneys of comparable skill, experience, and

---

[3] The twelve Johnson factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill, 522 F.3d at 186 n.3.

reputation in the community." <u>Nature's Enters., Inc. v. Pearson</u>, No. 08-cv-8549, 2010 WL 447377, at *9 (S.D.N.Y. Feb. 9, 2010). The Circuit's "forum rule" generally requires courts to "use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." <u>Simmons</u>, 575 F.3d at 174.

In determining the amount of a fee award, "district courts must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d Cir. 1985). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." <u>Kirsch v. Fleet St., Ltd.</u>, 148 F.3d 149, 173 (2d Cir. 1998).

The plaintiffs, as the fee applicants, "bear[] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." <u>Allende v. Unitech Design, Inc.</u>, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011).

**B.**

The plaintiffs request fees at the following rates for the hours indicated: Scott M. Riemer at $925 per hour for 45.35

hours for a total of $41,948.75; Jennifer Hess at $750 per hour for four hours for a total of $3,500; Ryan McIntyre at $600 per hour for 302.65 hours for a total of $181,590; Matthew Maddox at $600 per hour for 23.85 hours for a total of $14,310; Samantha Wladich at $500 per hour for 0.1 hours for a total of $50; Jacob Reichman at $450 per hour for 56 hours for a total of $25,200; and three paralegals at $300-$385 per hour for 19.3 hours for a total of $6,271.50. See Aff. of Scott Riemer ("Riemer Aff.") ¶¶ 3, 67, ECF No. 93. These fees add up to a total of $272,371.25 for 451.2 hours of work. Id. ¶ 67. The plaintiffs seek a total fees award of $245,143.12, reflecting a voluntary across-the-board reduction of $27,237.13 (10%) "to offset for any possible inefficiency, duplication of efforts, or failure to delegate certain tasks." Id. ¶ 68; Pltfs. Br. at 17, ECF No. 94.

The defendant argues that the fees sought are unreasonable for three reasons. First, the defendant complains that the requested fee amount "dwarfs" the total value of the life insurance benefits at issue: $125,000. Def. Opp. at 9, ECF No. 103. Second, the defendant claims that the hourly rates of the plaintiffs' attorneys are excessive. Id. at 10-13. Third, in the defendant's view, the number of hours charged by the plaintiffs' attorneys is unreasonable. Id. at 13-19.

1.

To begin, the defendant argues that any award of attorney's fees should not exceed the Plans' benefit amount and that the amount requested by the plaintiffs is therefore per se unreasonable. In this case, the fee award sought by the plaintiffs is almost double the Plans' benefit amount.

In the civil rights context, the Second Circuit Court of Appeals has rejected the approach that the defendant proposes in this case. Limiting the amount of a fee award to a percentage of the amount of the plaintiff's monetary recovery would "conflict[] with the legislative intent and rationales of the [relevant] fee-shifting statute." Quaratino v. Tiffany & Co., 166 F.3d 422, 426 (2d Cir. 1999). The Quaratino court observed: "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in may cases was too small to attract effective legal representation." Id.

Some courts in this Circuit have also adopted such a rule in ERISA cases. See, e.g., Lampert v. Metropolitan Life Ins. Co., No. 03-cv-5655, 2004 WL 1395040, at *3 (S.D.N.Y. June 21, 2004) (rejecting the defendant's contention that "the amount sought or recovered by the plaintiff constitutes a limitation on the fee that can be awarded"); see also Fairbaugh v. Life Ins. Co. of N. Am., 872 F. Supp. 2d 174, 191-92 (D. Conn. 2012). As

the court in Fairbaugh put it, "[i]t is a distinction without a
difference that Quaratino involved a civil rights case and this
case is an ERISA case. In a real sense, ERISA's remedial
provisions define and protect the 'civil rights' of . . . plan
beneficiaries . . . , who require all the protection they can
get in a world seemingly populated by numerous insurance
companies who prefer not to pay benefits." Fairbaugh, 872 F.
Supp. 2d at 191–92.

Courts of Appeals in other jurisdictions have adopted the
same rule in the ERISA context. See, e.g., Building Serv. Local
47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46
F.3d 1392, 1401 (6th Cir. 1995) ("[I]n ERISA cases, there is no
requirement that the amount of an award of attorney's fees be
proportional to the amount of the underlying award of
damages."); Operating Engineers Pension Trusts v. B & E Backhoe,
Inc., 911 F.2d 1347, 1355–56 (9th Cir. 1990) (rejecting the
employer's proposal that the court "develop a new 'de minimus'
rule to bar litigation where only a few hours trust contribution
is owing" and "[t]he recovery for attorney's fees . . . far
exceeded the actual recovery" due under ERISA).

The defendant's position makes little sense in the ERISA
context. In ERISA cases, "the entire purpose of the fee-shifting
provision is to enable plaintiffs to pursue benefits to which

they are entitled, even where the amount claimed is relatively low." Lampert, 2004 WL 1395040, at *3. Capping fee awards at the benefit amount sought would frustrate this statutory purpose. "It costs money to litigate claims, however small, and unless plaintiffs were able to recover the entirety of their reasonable fees, defendants could ignore small but meritorious claims because plaintiffs would be unable to pursue them effectively." Id.; see also Fairbaugh, 872 F. Supp. 2d at 192 ("Limiting the attorney's fees of successful ERISA plaintiffs to a portion of the amount recovered could encourage companies to think that the lower the amount at stake, the more outrageous their conduct can be without the risk of being held accountable at law.").

The defendant relies on Solnin v. Sun Life and Health Insurance Company, 776 F. App'x 731 (2d Cir. 2019). In Solnin, a nonprecedential summary order, the Second Circuit Court of Appeals affirmed the district court's award of $222,320.94 in fees to an attorney for a plaintiff who had obtained a $188,936.77 judgment in an ERISA case. Id. at 732. On appeal, the Solnin plaintiff argued that the district court should have awarded attorney's fees based on higher rates, for a total of $502,456.50 in fees. See id. In rejecting the plaintiff's argument, the Court of Appeals explained that, among other things, it was "not convinced that a reasonable, paying client

13

in an ERISA litigation would be willing to pay an hourly rate resulting in attorneys' fees so far in excess of the amount of recovery." Id. at 732–33.

However, Solnin is distinguishable, and in any event does not support the defendant's position. The higher fee that the attorney requested in that case would have been almost three times the judgment awarded to the plaintiff—a disparity that was an order of magnitude greater than the one between the fee amount sought and the benefit amount in this case. See id. at 732. Moreover, the original fee amount awarded in Solnin ($222,320.94) in fact exceeded the underlying judgment obtained ($188,936.77). See id. Therefore, Solnin does not stand for the proposition that a fee award in an ERISA case is limited by the amount of benefits sought or recovered.

In view of the purpose of ERISA's fee-shifting provision, as well as persuasive cases from other Circuits and within this Circuit, a per se rule limiting a fee award to the amount of benefits sought is inappropriate.

**2.**

"[A] reasonable hourly rate is the prevailing market rate." Farbotko v. Clinton County of New York, 433 F.3d 204, 208 (2d Cir. 2005). Determining the "prevailing market rate" requires a "case-specific inquiry into the prevailing market rates for

14

counsel of similar experience and skill to the fee applicant's counsel," and "may . . . include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Id. at 209. "[T]he fee applicant has the burden of showing by satisfactory evidence—in addition to the attorney's own affidavits—that the requested hourly rates are the prevailing market rates." Id.

In this case, the defendant contends that the plaintiffs have failed to satisfy their burden to show that the requested hourly rates are reasonable. According to the defendant, the evidence submitted by the plaintiffs should be given little weight because those submissions pertain to cases involving long term disability ("LTD") benefits, not the life insurance benefits at issue in this case. The defendant also argues that the cases that the plaintiffs cite—in which the Firm was awarded fees at hourly rates close to those requested in this case—concerned LTD claims. In the defendant's view, LTD cases are a poor comparator for life insurance cases: LTD cases tend to be more complicated and, unlike life insurance cases, involve large and complicated administrative records. See Def. Opp. at 10-11.

However, with respect to the purported distinctions between life insurance and LTD cases, the plaintiffs' response is persuasive. The Firm handles both ERISA LTD and ERISA life

insurance claims. See, e.g., Graziano, 2024 WL 1175143, at *1.
The plaintiffs represent that the Firm charges consistent hourly
rates for all work and never negotiates its rates. See Riemer
Aff. ¶ 17. To the extent that life insurance cases may be less
complex than LTD cases, the plaintiffs cogently point out that,
even at the same hourly rate, less complex cases should still
cost less because such cases require fewer hours. Pltfs. Reply
at 5 n.3, ECF No. 113. Therefore, the retainer agreements
attached to the plaintiffs' supporting affirmation—reflecting
the Firm's hourly rates in LTD cases, see Ex. A to Riemer Aff.,
ECF No. 93-1—constitute relevant evidence of what the Firm's
clients generally are willing to pay, as are the LTD cases that
the plaintiffs cite.[4]

Several considerations favor finding that the requested
rates are reasonable. First and foremost, over 150 of the Firm's
clients have agreed to pay these hourly rates. See Riemer Aff.
¶¶ 16-17; Ex. A to Riemer Aff. Also, "the Firm and its attorneys
specialize in high-stakes ERISA litigation and the Firm is
highly regarded in the relevant legal community and by their
clients." Graziano, 2024 WL 1175143, at *3; see also Riemer Aff.
¶¶ 6—14; Decl. of Michael S. Hiller ("Hiller Decl.") ¶ 17, ECF

---

[4] The plaintiffs in this case hired the Firm on a contingency fee basis. See
generally ECF No. 116. The retainer agreement between the plaintiffs and the
Firm does not specify an hourly rate. See ECF No. 116-1.

No. 93-2. Furthermore, in two recent ERISA LTD cases in this District, the court found that similar rates for the same attorneys and paralegals were reasonable. See Chung v. Provident Life & Casualty Ins. Co., No. 21-cv-9344, 2024 WL 78366, at *1 (S.D.N.Y. Jan. 4, 2024) (awarding fees to Riemer at an hourly rate of $875, Hess at an hourly rate of $675, McIntyre at an hourly rate of $480, Maddox at an hourly rate of $600, Wladich at an hourly rate of $450, and paralegals at an hourly rate of $300-370); Rhodes v. First Reliance Standard Life Ins. Co., No. 22-cv-5264, 2023 WL 9113226, at *1 (S.D.N.Y. Dec. 27, 2023) (awarding fees to Riemer at an hourly rate of $875, Hess at an hourly rate of $675, McIntyre at an hourly rate of $480, Maddox at an hourly rate of $600, Wladich at an hourly rate of $430, and paralegals at an hourly rate of $275-370).[5]

On the other hand, recent awards in other similar cases from this District suggest that the requested rates are higher than rates that courts have found reasonable. For example, one year ago, the court in Graziano found the requested rates excessive and reduced them by 10%, ultimately awarding the following hourly rates: $788 for Riemer, $608 for Hess, $540 for Maddox, $432 for McIntyre, and $248-315 for the paralegals. See

---

[5] McIntyre was promoted from Associate to Senior Associate in 2024. Riemer Aff. ¶ 45.

2024 WL 1175143, at *3. Additionally, in 2019, a court found that hourly rates in ERISA cases ranged from $450 to $660 for experienced partners and from $125 to $350 for associates (depending on experience). Montefiore Med. Ctr. v. Local 272 Welfare Fund, Nos. 09-cv-3096, 14-cv-10229, 2019 WL 4565099, at *6-7 (S.D.N.Y. Sept. 19, 2019). And in a 2017 case, the court found the following rates to be reasonable for another firm in this District specializing in ERISA litigation: $660 for a partner with over 25 years of experience, $570 for another senior attorney at that firm, $450 for senior associates, $285-$300 for an associate, and $125-$190 for the paralegals. Dimopoulou, 2017 WL 464430, at *3. By comparison, the rates requested in this case are high.

On balance, a 10% reduction will "bring the proposed rates closer to the prevailing market rates in the relevant community approved in ERISA cases in this District." Graziano, 2024 WL 1175143, at *3. Applying this reduction yields the following reasonable hourly rates: Riemer at $832.50; Hess at $787.50; McIntyre at $540; Maddox at $540; Wladich at $450; Reichman at $405; Cochrane at $346.50; Carrion at $279; and Renner at $270.

**3.**

The Firm billed 451.25 hours to this case, over 300 of which were billed by McIntyre, a Senior Associate. See Riemer

Aff. ¶ 67. The defendant claims that the total number of hours that the Firm billed is excessive and unreasonable.

When viewed in the context of this case, some of the billing entries reflect excessive hours charged. Although the Firm litigated the case through summary judgment and through a bench trial on the administrative record, the case involved a relatively small administrative record—comprising only 286 pages—and questions of pure contract interpretation. Considered against this backdrop, some of the charges are unreasonable.

For example, the Firm billed over 20 hours for preparing the complaint—just eight pages long—and "initial litigation documents" in this case. See Pltfs. Br. at 15; Ex. F to Riemer Aff. at 12-14, ECF No. 93-6. In addition, the Firm billed more than 50 hours to "prepare settlement demand & discussions," but it is unclear why such work in this case would require 50 hours. See Pltfs. Br. at 15; Ex. F to Riemer Aff. at 32–38.

Also, the Firm billed almost 55 hours for preparing the plaintiffs' trial brief (eight pages long) and proposed Findings of Fact and Conclusions of Law (14 pages long)—after the Firm had already devoted substantial time to briefing and arguing the parties' cross-motions for summary judgment, which concerned many of the same issues. See Pltfs. Br. at 15; Ex. F to Riemer Aff. at 29–31.

19

The plaintiffs' attorneys then spent nearly 130 hours
preparing a response to the defendant's trial brief (as well as
a response to the defendant's proposed Findings of Fact and
Conclusions of Law). See Pltfs. Br. at 15. The plaintiffs' reply
brief was only six pages long. See ECF No. 61. There is no
reason why experienced ERISA attorneys should spend over ten
full business days drafting these submissions. See, e.g.,
Levitian v. Sun Life & Health Ins. Co. (U.S.), No. 09-cv-2965,
2013 WL 3829623, at *10 (S.D.N.Y. July 24, 2013), report and
recommendation adopted, 2013 WL 4399026 (S.D.N.Y. Aug. 15, 2013)
(finding that the Firm's attorneys should not have needed to
devote more than 34 hours to drafting a ten-page reply in
support of their client's summary judgment motion).

The defendant points to other specific entries for which it
argues the hours were unjustified. That said, "[i]t is
unnecessary to itemize all the instances where the hours were
excessive, duplicative, or otherwise problematic." Alicea v.
City of New York, 272 F. Supp. 3d 603, 612 (S.D.N.Y. 2017). "It
is common practice in this Circuit to reduce a fee award by an
across-the-board percentage where a precise hour-for-hour
reduction would be unwieldy or potentially inaccurate." Capitol
Records, Inc. v. MP3tunes, LLC, No. 07-cv-9931, 2015 WL 7271565,
at *5 (S.D.N.Y. Nov. 12, 2015)

Perhaps anticipating these issues, the fee award sought by the plaintiffs already reflects a voluntary 10% reduction "to offset for any possible inefficiency, duplication of efforts, or failure to delegate certain tasks." Pltfs. Br. at 17. In view of the problems with the hours billed identified above, a total 20% cut to the hours billed—in addition to the 10% reduction to the requested hourly rates, discussed above—would be appropriate in this case. Therefore, attorney's fees will be awarded as follows:

|  | Requested Hourly Rate | Modified Hourly Rate (-10%) | Hours Requested | Modified Hours (-20%) | Revised Total |
|---|---|---|---|---|---|
| Riemer | 925 | 832.50 | 45.35 | 36.28 | $ 30,203.10 |
| Hess | 875 | 787.50 | 4 | 3.2 | $ 2,520.00 |
| McIntyre | 600 | 540.00 | 302.65 | 242.12 | $ 130,744.80 |
| Maddox | 600 | 540.00 | 0.1 | 0.08 | $ 43.20 |
| Wladich | 500 | 450.00 | 23.85 | 19.08 | $ 8,586.00 |
| Reichman | 450 | 405.00 | 56 | 44.8 | $ 18,144.00 |
| Cochrane | 385 | 346.50 | 4.4 | 3.52 | $ 1,219.68 |
| Carrion | 310 | 279.00 | 10.75 | 8.6 | $ 2,399.40 |
| Renner | 300 | 270.00 | 4.15 | 3.32 | $ 896.40 |
|  |  |  |  | Total Award | $ 194,756.58 |

Accordingly, the plaintiffs are **awarded attorney's fees of $194,756.58,** which is a reasonable fee in light of the circumstances of this case.

21

**V.**

The plaintiffs seek $518.44 in costs. These costs reflect the expense of filing the complaint, serving the summons, obtaining transcripts, and sending courtesy copies to the Court. See Ex. F to Riemer Aff. at 38. These costs are reasonable, and the defendant does not object to them. Therefore, the request for payment of costs of $518.44 is **granted.**

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The plaintiff is **entitled to an award of $194,756.58 in reasonable attorney's fees and $518.44 in costs.** Because the parties have settled the liability issue in this case, the only remaining claim is for attorney's fees and costs. The Clerk is therefore requested to enter judgment in favor of the plaintiffs and against the defendant for the above amount of attorney's fees and costs.

The Clerk is respectfully directed to close all pending motions and to close the case.

**SO ORDERED.**

Dated:     **New York, New York**
           **March 10, 2025**

                                        John G. Koeltl
                                  **United States District Judge**

22